[Civ. No. 18851. Second Dist., Div. One. July 1, 1952.]

GEORGE S. DENBO, Appellant, v. WESTON INVESTMENT COMPANY (a Corporation), Respondent.

Vaughan, Brandlin & Wehrle, J. J. Brandlin and Pat B. Trapp for Appellant.

Guthrie, Darling & Shattuck and Milo V. Olson for Respondent.

WHITE, P. J.—Plaintiff appeals from a judgment of nonsuit in an action to recover a real estate broker's commission alleged to be due under the terms of a written contract. Plaintiff alleged that he had fully performed his obligations under the contract, which reads as follows:

"Mr. George S. Denbo
27111 Buckskin Lane
Rolling Hills
Via Lomita
California

"Dear Mr. Denbo:

"I enclose herewith a copy of a resolution adopted by the Board of Directors of Weston Investment Company at their meeting held on the 2d day of February 1948, authorizing the payment to you of a commission in the total sum of $35,000.00 under the terms and conditions in said resolution set forth.

"Pursuant to said resolution Weston Investment Company agrees to pay to you as such commission the following:

"The sum of $5,000.00 upon the execution of the agreement between Weston Investment Company as Optionor and K. Sande Senness as Optionee;

"The sum of 6⅔% of all moneys received by the corporation upon the exercise by said K. Sande Senness of his option contained in said agreement to purchase Parcel A as therein

set forth, less the sum of $5,000.00 paid upon the execution of said option agreement;

"The sum of 6⅔% of the sum received by Weston Investment Company upon the exercise by K. Sande Senness of his option to purchase Parcels B, C and D as described in said agreement until the total sum of $35,000.00 has been paid *by* you, provided, however, that all sums other than the sum of $5,000.00 paid to you upon the execution of said agreement are to be dependent upon and paid only when, as and if said K. Sande Senness exercises the various options in said agreement contained and the payment for each of said options as therein provided are received by Weston Investment Company.

"Payment of the aforesaid percentage shall be made to you immediately upon the exercise by K. Sande Senness of the options for each of said parcels as long as said option agreement is in force and effect. If said K. Sande Senness fails, neglects, or refuses to exercise any or all of said options the total amount to be paid to you hereunder will be the sum of $5,000.00 only provided to be paid upon the execution of said option agreement. In the event said K. Sande Senness exercises less than all of the options in said agreement contained, the percentage to be paid to you will apply only as to such options as are exercised by him.

"Upon the termination of said option agreement no further commissions or sums shall be payable to you hereunder.

"     .     .     .     .     .     .     .     .     .     .     "

By the option agreement referred to in the commission contract, K. Sande Senness was granted four options on four severally described parcels of land held by Weston Investment Company, known as parcels A, B, C and D, the options on the respective parcels to be exercised on or before July 1, 1948, on Parcel A; December 31, 1948, on Parcel B; July 1, 1949, on Parcel C, and December 31, 1949, on Parcel D. Senness failed to exercise the option on Parcel A within the required time, and defendant extended the option period from July 1, 1948, to October 1, 1948. Senness failed to exercise the option within the extended time, nor did he exercise his options on the remaining parcels. However, early in 1949, he entered into a new and different agreement with defendant and ultimately purchased the entire property.

The issue joined by the pleadings was whether or not plaintiff had performed under the commission contract. The trial court concluded that plaintiff had not so performed, for the

reason that the buyer, Senness, failed to exercise any of the options granted him by the option agreement and under the terms of the commission contract no further commissions were payable, other than the $5,000 paid to plaintiff for procuring Senness as an optionee.

Appellant contends that the issue of whether plaintiff had performed under his commission contract should have been submitted to the jury and presents the following propositions in support of his contention:

"Viewing the evidence adduced in this case in the light of the rule that on an appeal from a judgment of nonsuit every inference of fact and intendment of law must be liberally construed in favor of plaintiff's case, establishes (1) that defendant by its conduct waived the provisions as to time for exercise of the options; or (2) that the time for exercising the options was extended to the dates of final acquisition of the various parcels.

"(a) The conduct of defendant in treating Senness as the legal option owner after expiration of the date for exercising the options amounted to a waiver of the provisions as to time for exercise of the options.

"The conduct of defendant and Senness evidencing that Senness continued to be the legal option owner after October 1, 1948, permits an inference that the time for exercising the options was extended after that date.

"By waiving the provisions with respect to the time in which Senness could exercise the options or by extending the time for exercise of the options defendant in effect prevented performance of a condition of the contract and performance of such condition was therefore excused."

"The trial court erred in refusing to admit testimony as to negotiations prior to execution of the written contract as well as testimony as to services performed by plaintiff which were covered by the contract."

Appellant's last point above quoted is without merit. Evidence relating to negotiations leading up to the execution of a contract concededly is admissible to explain uncertainties or ambiguities in the contract but no ambiguity or uncertainty exists in the commission contract here under consideration. No problem of interpretation is presented. More explicit language could hardly have been used to provide that for plaintiff to receive his additional commissions the buyer must exercise his options in the manner and within the times specified in the option agreement. Nor was testimony as to

plaintiff's services prior to the execution of the commission agreement relevant or material. There was here no dispute as to the existence of a consideration for the making of the commission contract and hence no necessity for proof thereof.

■ In determining this appeal from a judgment of non-suit, we must examine the trial court's ruling in the light of the uniform rule that the evidence should be viewed most favorably to the plaintiff and every legitimate inference drawn in his favor and any conflicting evidence disregarded (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 342 [163 P.2d 869, 165 A.L.R. 621].) As stated in *Laraway* v. *First Nat. Bank of La Verne*, 39 Cal.App.2d 718, 726 [104 P.2d 95], "every inference of fact and intendment of law must be liberally construed in favor of sustaining the case made by plaintiff, to the end that causes may be determined upon their merits." So viewing the evidence adduced by the plaintiff, we nevertheless conclude that the nonsuit was properly granted.

■ The right of a broker to recover his commission must be measured primarily by the terms of his employment (*Peterson* v. *Montgomery Holding Co.*, 89 Cal.App.2d 890, 893, 894 [202 P.2d 365]). ■ The broker may, by special agreement, make his compensation depend upon a contingency or the happening of a condition precedent, and unless such contingency occurs, he has no right of recovery. (*Peterson* v. *Montgomery Holding Co.*, supra; *Leventritt* v. *Cowell*, 21 Cal. App. 597 [132 P. 627]; *McGill* v. *Fleming*, 32 Cal.App.2d 601 [90 P.2d 341]; *Hirschberg* v. *Rose*, 136 Cal.App. 653 [29 P.2d 785]; *Edgecomb* v. *Callahan*, 132 Cal.App. 248 [22 P.2d 521]; *Hollingsworth (W. I.) & Co.* v. *Haas*, 6 Cal. App.2d 519 [45 P.2d 360].)

By its agreement Weston Investment Company undertook to and did pay to plaintiff $5,000 for his services in securing Mr. Senness as an "optionee" of the company's property. Further compensation to plaintiff was "dependent upon" and to be paid only "when, as and if" Senness exercised the various options. Further, upon the "termination" of the option agreement no further commissions or sums were to be payable.

■ In the special contract situation here presented, it is incumbent upon the broker to show substantial performance by him of the contractual terms upon which his compensation depends, and proof of a sale on terms different from those specified in the commission agreement is not sufficient. In

*Palmtag* v. *Danielson*, 30 Cal.2d 517, 521 [183 P.2d 265], for example, it is stated that ordinarily the price at which a broker is authorized to sell is considered merely an asking price to guide the broker in his negotiations and the owner cannot deprive the broker of his commission by conducting the final negotiations himself and selling at a lower figure to the purchaser procured by the broker. However, it is further stated, an owner is entitled to make a special contract whereby the broker is required to procure a purchaser willing to pay a particular price or meet specific conditions imposed by the owner, and in such a case, if the owner sells to a purchaser procured by the broker but on different terms from those stated in the contract, the broker is not entitled to a commission in the absence of bad faith. The court in the last-cited case referred to *Backman* v. *Guadalupe Realty Co.*, 78 Cal.App. 347 [248 P. 296], from which we quote (p. 352) : "Here we have an express contract, obligating the defendant upon certain terms and conditions, specifying them with certainty and reiterating that the commission is to be paid if the broker shall secure an acceptance of the *above proposition* to exchange the property on the *above terms*. The general rule is that an agent performs his part of such a contract when he produces a purchaser able, ready, and willing to buy upon the terms specified by the owner. Upon a *general* (italics added) contract of employment, certainly, the owner may make concessions to a purchaser without loss of the commission to the broker, but there is a distinction in fact recognized by the authorities, between a general and special contract of employment in a matter of this kind. It appears that where the broker has undertaken a *special* (italics added) task by his contract of employment and fails to perform it, the fact of having first introduced the buyer and seller will not entitle him to recover. . . ."

In the case now before us the broker undertook a special contract—to procure the exercise by Senness of four certain options on four parcels constituting the tract to be sold. None of these options were exercised. The option agreement provided that time was of the essence. Nevertheless an extension of time was granted by the seller. Thereafter the seller offered a further extension upon conditions which Senness failed to meet. The seller continued, however, to encourage Senness to purchase the property, and ultimately entered into a contract with him which, we assume, was performed. Nevertheless, Senness never exercised the options,

the exercise of which constituted a condition precedent to the right of plaintiff to a commission according to his express contract.

The option agreement which Senness failed to perform and the agreement under which he finally consummated a sale of the property were, it may be conceded, similar in many respects, and further, as above stated and as contended by appellant, Weston Investment Company encouraged Senness in his efforts to consummate the transaction and treated him as a person having an interest in the property; but assuming these facts, we are nevertheless of the view that plaintiff wholly failed to show performance on his part under the express terms of his special contract. Bad faith on the part of the seller does not appear from the evidence, nor is its existence suggested on this appeal. The acts of the seller in encouraging Senness and appearing on his behalf in seeking a zoning variance for part of the property, as well as other acts of similar nature, are insufficient to support an inference that the seller had waived the time provisions of the option agreement as once extended or the specific provisions of the commission agreement. To hold plaintiff's showing sufficient, under the facts here present, would be to nullify any attempt by broker and client to enter into a special contract conditioning the payment of the broker's compensation upon the happening of a specified contingency.

The judgment appealed from is affirmed.

Doran, J., and Drapeau, J., concurred.