In re Paul Irvin PARKER, Debtor.

AMERICAN FAMILY LIFE ASSURANCE COMPANY, Plaintiff,

v.

Paul Irvin PARKER, Defendant.

Bankruptcy Case No. 80–00076–COL.
A.P. No. 80–0113–COL.

United States Bankruptcy Court,
M. D. Georgia,
Columbus Division.

March 11, 1981.

William M. Cheves, Columbus, Ga., for plaintiff.

E. Wright Davis, Columbus, Ga., for defendant.

Charles A. Gower, Columbus, Ga., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALGIE M. MOSELEY, Bankruptcy Judge.

There are two questions for decision:

1. Where Debtor/Defendant was a sales representative for Plaintiff, an insurance company, are renewal commissions due Defendant after bankruptcy property of the estate? and

2. Is Plaintiff the holder of a secured claim? Herein, these two questions are answered in the affirmative.

## FINDINGS OF FACT

1. The Defendant was an independent contractor selling insurance policies of Plaintiff.

2. Employment of Defendant by Plaintiff as an independent contractor terminated before bankruptcy.

3. On the 11th day of February, 1980, Defendant filed a voluntary petition in bankruptcy.

4. Pursuant to the contract of employment entered into on September 7, 1976, Defendant has an unconditional vested right to receive renewal commissions when policy holders renew their policies with Plaintiff.

5. Subsequent to the time when Defendant was employed by Plaintiff, Defendant did not have to perform any service substantial or minimal to receive the renewal commissions.

6. The contract of employment provided that: "any sums advanced to the Associate [Defendant] shall create a liability to American Family [Plaintiff] on the part of the Associate to be charged back against earned commissions or payable on demand."

7. On the date of bankruptcy Defendant owed Plaintiff $8,982.86 as sums advanced to Defendant.

8. The parties have stipulated that there are no issues of fact involved except the present value as of the date of bankruptcy of the renewal commissions due Defendant subsequent to bankruptcy.

## ISSUES AND CONCLUSIONS OF LAW

1. Is the Plaintiff a holder of a secured claim as to the indebtedness of Defendant to Plaintiff for advances? The answer is yes.

2. Are the renewal commissions due Defendant, subsequent to bankruptcy, property of the estate free from any claims of Defendant? The answer is yes.

## DISCUSSION

On January 28, 1981, a Pre-trial Conference was held at which time Plaintiff and Defendant stipulated that there are no issues of fact except, as stated above, the value of renewal commissions. It was further stipulated that the above issues were purely issues of law, and after respective briefs were submitted to the Court, the Court was to decide the issues as matters of law.

Schedules attached to the voluntary petition in bankruptcy failed to disclose that any renewal commissions were due to Defendant from Plaintiff. These renewal commissions first came to the attention of the Trustee when he became aware that Plaintiff had filed what was denominated as a "Complaint to Determine Dischargeability of Debt" filed on April 17, 1980. Thereafter, at the Court's suggestion at a conference at which all parties were

present, the Plaintiff filed a complaint denominated "Plaintiff's Recasted Complaint to Determine Secured Status." Thereafter, the Trustee, for the benefit of the general creditors, has filed briefs in support of Plaintiff's position, as it appeared that substantial sums of renewal commissions were due to Defendant from Plaintiff over and above the advances.

■ The Trustee and Plaintiff had agreed that Plaintiff would purchase the Trustee's interest in the renewal commissions for $20,000. However, Defendant asserts that the value of the renewal commissions are, in fact, worth in excess of $20,000, and, indeed, asserts that upon a proper evaluation there would be funds available to the Trustee to pay all of the creditors in full and leave some excess for the Defendant. For this reason, Defendant has standing to participate in valuing the renewal commissions. If it should ultimately develop that the value of the renewal commissions will leave no excess for Defendant, then Defendant is without standing to assert positions only within the province of the Trustee.

■ In the instant case, as in *Mutual Trust Life Insurance Company v. Wemyss*, (D.C.Me.1970) 309 F.Supp. 1221, where renewal commissions were found to be property of the estate, the facts disclose there, as here, that defendant was entitled to receive the renewal commissions, and the right to receive these commissions was in no way conditioned upon future services to plaintiff. At page 1230 in *Wemyss* the following appears:

"... It is undisputed that under the terms of his employment contract with Mutual, Wemyss, or his estate, was entitled to receive commissions upon all premiums due, collected and paid upon policies written by him or his general agency before termination of his employment. It is also uncontroverted that Wemyss' right to receive these commissions was in no way conditioned upon his future services to Mutual. Under these circumstances it is settled law that as a general proposition Wemyss' contract right to future renewal commissions would pass to his trustee in bankruptcy as a non-exempt transferable property right pursuant to Section 70, sub. a(5) and (6) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5) and (6) (1964). *In re Wright*, 157 F. 544 (2d Cir. 1907); *Equitable Life Assurance Society v. Stewart*, 12 F.Supp. 186, 191–192 (W.D.S.C.1935); *In re Fahys*, 18 F.Supp. 529 (S.D.N.Y.1937). *See In re Leibowitt*, 93 F.2d 333, 335 (3rd Cir. 1937), cert. denied, *Stein v. Leibowitt*, 303 U.S. 652, 58 S.Ct. 750, 82 L.Ed. 1113 (1938); 4A Collier ¶ 70.34."

*Wemyss* and the cases cited in *Wemyss* were decided under the old Bankruptcy Act, however, under the new Bankruptcy Code, the scope of what is property of the estate is much broader than under the old Act. It is almost limitless under the new Code. "Generally speaking, this section [11 U.S.C. § 541] will bring anything of value that the debtor has into the estate." Bkr-L Ed § 23:2. If the renewal commissions were property of the estate under the old Act, it follows that they would be under the more encompassing definition of property of the estate under the new Code. Property of the estate under the new Code is in 11 U.S.C. § 541. § 541(a)(1) is as follows:

"(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located;

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

Section 541(a)(1) includes as property of the estate all property of the debtor, including that necessary for a fresh start. Once the property comes into the estate, an individual may exempt it under § 522. The court will then determine what property may be exempted and what remains property of the estate. 4 Collier on Bankruptcy, 15th Ed., ¶ 541.01, p. 541–6.

11 U.S.C. § 541(a)(1) includes as property of the estate all property of the debtor,

even that necessary for a fresh start. The result is that all interests of the debtor in property as of the commencement of the case becomes property of the estate, including any interests of the debtor in exempt property. It would appear under § 522(b) that an individual debtor must claim the exemption in order to have it be effective. Otherwise, the exempt property will remain property of the estate. The court has jurisdiction to make the determination as to what property may be exempt and what will remain property of the estate. 4 Collier on Bankruptcy, 15th Ed., ¶ 541.02[3], p. 541–15.

"Because the scope of section 541(a)(1) is so broad and all encompassing, the discussion in the following paragraphs cannot be considered exhaustive. It is important to keep in mind, therefore, that the underlying theory of section 541(a)(1) is to bring into the estate *all* interests of the debtor in property as of the date the case is commenced. Thus, as a general rule, the estate created under section 541 will include all legal or equitable interests of the debtor in property, both tangible and intangible, including exempt property, as of the date the case is commenced." 4 Collier on Bankruptcy, 15th Ed., ¶ 541.06, p. 541–27.

See also *In re Malloy*, (Bkrtcy.M.D.Fla. 1980), 2 B.R. 674, a case under the old Act, and *In re Marshburn*, (Bkrtcy.Colo.1980), 5 B.R. 711, 6 BCD 922, a case under the new Code. Each of these cases reach the conclusion that renewal commissions are property of the estate.

■ As to whether or not Plaintiff is a holder of a secured claim, *Wemyss* is also persuasive that Plaintiff is. The Trustee takes, as of the date of bankruptcy, whatever right Defendant had to receive future renewal commissions. However, the Trustee's right can rise no higher than Defendant's, and the only right of Defendant under the contract was to be paid any renewal commissions which might remain after defendant's indebtedness to Plaintiff was satisfied.

Accordingly, from the renewal commissions Plaintiff will be paid in full first; then, the remainder of the renewal commissions will go to the Trustee and after payment of all claims and expenses the remainder, if any, in the hands of the Trustee of the renewal commissions will be paid by the Trustee to Defendant.